25-1167-cv
*Long Island Anesthesiologists v. UnitedHealthcare*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of February, two thousand twenty-six.

PRESENT:
> JOHN M. WALKER, JR.,
> BARRINGTON D. PARKER,
> JOSEPH F. BIANCO,
> *Circuit Judges.*

---

LONG ISLAND ANESTHESIOLOGISTS PLLC,

*Plaintiff-Appellant*,

v.                                                                    25-1167-cv

UNITEDHEALTHCARE INSURANCE COMPANY OF NEW YORK INC., AS PROGRAM ADMINISTRATOR FOR THE EMPIRE PLAN MEDICAL/SURGICAL PROGRAM, MULTIPLAN, INC.,

*Defendants-Appellees*.

---

FOR PLAINTIFF-APPELLANT:             ROY W. BREITENBACH (Megan E. Knepka, *on the brief*), Harris Beach Murtha Cullina PLLC, Uniondale, New York.

FOR DEFENDANTS-APPELLEES:

BRIAN D. BOONE (Kyle R. Hair, S. Blake Davis, D. Andrew Hatchett, and Karla M. Doe, *on the brief*), Alston & Bird LLP, Charlotte, North Carolina, and Atlanta, Georgia, *for Defendant-Appellee UnitedHealthcare Insurance Company of New York Inc.*

Errol J. King, Jr. (A. Paul LeBlanc, Jr., and Craig L. Caesar, *on the brief*), Phelps Dunbar LLP, Baton Rouge, Louisiana, and New Orleans, Louisiana, *for Defendant-Appellee MultiPlan, Inc.*

Appeal from a judgment of the United States District Court for the Eastern District of New York (Hector Gonzalez, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on April 8, 2025, is **AFFIRMED**.

Plaintiff-Appellant Long Island Anesthesiologists PLLC ("LIA") appeals from the district court's judgment dismissing, pursuant to Federal Rule of Civil Procedure 12(b)(6), its amended complaint. LIA sued Defendants-Appellees UnitedHealthcare Insurance Company of New York Inc. and MultiPlan, Inc, alleging three federal antitrust claims under the Sherman Act, 15 U.S.C. §§ 1–2, one state antitrust claim under New York's Donnelly Act, N.Y. Gen. Bus. L. §§ 340 *et seq.*, and a claim for unjust enrichment. The district court granted Defendants' motion to dismiss the federal claims and Donnelly Act claim and declined to exercise supplemental jurisdiction over the remaining unjust enrichment claim, which it dismissed without prejudice. *See generally Long Island Anesthesiologists PLLC v. United Healthcare Insurance Company of New York Inc.*, No. 22-CV-04040 (HG), 2025 WL 1031093 (E.D.N.Y. Apr. 7, 2025). We assume the parties' familiarity with the underlying facts, procedural history, and issues on

appeal, to which we refer to only as necessary to explain our decision to affirm.

According to the amended complaint, LIA is a private anesthesiology practice located in West Islip, New York, that provides anesthesia services at Good Samaritan Hospital Medical Center. Like many anesthesia practices in the New York metropolitan area, LIA is out-of-network with most health plans. One such health plan is the Empire Plan, which covers approximately 1.2 million state and local government employees, retirees, and their dependents. UnitedHealthcare administers the Empire Plan. In the years leading up to 2022, reimbursements for services provided to individuals covered by the Empire Plan accounted for approximately 40% of LIA's revenue. Until January 2022, the Empire Plan was treated as subject to the New York Surprise Bill Law, which required health plans to reimburse out-of-network healthcare providers a "reasonable amount" for covered services. LIA alleges that, beginning in January 2022, the Empire Plan determined it was not subject to the New York Surprise Bill Law, but instead was subject to the federal No Surprises Act, which contains an alternative system for reimbursement. LIA further alleges that its reimbursements pursuant to the federal law have been 80% less than that it received pursuant to the state law. LIA filed this action in July 2022. In November 2023, the district court dismissed LIA's original complaint. LIA then filed an amended complaint in May 2024, which the district court dismissed in April 2025. This appeal followed.

"We review the grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Fink v. Time Warner Cable*, 714 F.3d 739, 740–41 (2d Cir. 2013) (per curiam). "To state an antitrust claim, a plaintiff must first show antitrust standing" by demonstrating that "(1) he has suffered antitrust

3

injury, and (2) he is an efficient enforcer of the antitrust laws." *Laydon v. Coöperatieve Rabobank U.A.*, 55 F.4th 86, 98 (2d Cir. 2022) (alterations adopted) (internal quotation marks and citation omitted).

The district court concluded that LIA failed to allege antitrust standing because it had not plausibly alleged antitrust injury. *Long Island Anesthesiologists*, 2025 WL 1031093, at *6–7. As we have explained, we utilize a three-step process to determine whether a plaintiff has adequately alleged an antitrust injury:

> First, the plaintiff must identify the practice complained of and the reasons such a practice is or might be anticompetitive. Second, the court must identify the actual injury the plaintiff alleges by looking to the ways in which the plaintiff claims it is in a worse position as a consequence of the defendant's conduct. Third, the court must compare the anticompetitive effect of the specific practice at issue to the actual injury the plaintiff alleges. It is not enough for the actual injury to be causally linked to the asserted violation. Rather, in order to establish antitrust injury, the plaintiff must demonstrate that its injury is of the type the antitrust laws were intended to prevent and that flows from that which makes or might make defendants' acts unlawful. An antitrust injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.

*DirecTV, LLC v. Nexstar Media Grp., Inc.*, 162 F.4th 295, 308–09 (2d Cir. 2025) (internal quotation marks and citations omitted). Applying this framework, the district court held that LIA failed to allege adequately antitrust injury because "the harm [LIA] alleges is not the type the antitrust laws were intended to prevent." *Long Island Anesthesiologists*, 2025 WL 1031093, at *5 (internal quotation marks and citation omitted). Specifically, the district court noted that LIA had not been excluded from the relevant market and that, even if it had, the mechanism by which LIA was allegedly harmed, *i.e.*, the "lowering [of] reimbursement rates to out-of-network providers[,] is neither inherently unlawful nor anticompetitive under the antitrust laws." *Id.* at *6. We agree.

4

LIA alleges that Defendants have forced out-of-network anesthesia providers to accept low reimbursement rates through techniques such as a "campaign of excessive correspondence with exceedingly short deadlines," Joint App'x at 627, and the dramatic lowering of reimbursement rates will require out-of-network anesthesia providers to cut back on services or go out of business, thereby "decreas[ing] output and quality of anesthesia services." *Id*. at 641. These allegations do not allege an antitrust injury, which is "an injury attributable to the *anticompetitive aspect* of the practice under scrutiny." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 122 (2d Cir. 2007) (emphasis added). We have repeatedly stated that anticompetitive conduct "is conduct without a legitimate business purpose that makes sense only because it eliminates competition." *In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 133 (2d Cir. 2014) (internal quotation marks and citation omitted).

This case concerns monopsony, "[a] market situation in which one buyer controls the market," *Monopsony*, BLACK'S LAW DICTIONARY (12th ed. 2024), which "is to the buy side of the market what a monopoly is to the sell side," *Weyerhauser Co. v. Ross-Simmons Hardwood Lumber Co., Inc.*, 549 U.S. 312, 320 (2007). LIA alleges that it and other anesthesia practices have made a conscious, if not concerted, decision to remain out-of-network with the Empire Plan in order "to preserve the favorable out-of-network Empire Plan reimbursement rates." Joint App'x at 619. Those reimbursement rates fell once the Empire Plan determined it was subject to the federal No Surprises Act. But these lower reimbursement rates are not "conduct without a legitimate business purpose;" rather, they are in keeping both with relevant statutory language and with run-of-the-mill business practice in the health insurance system. *In re Adderall*, 754 F.3d at 133 (internal quotation marks omitted); *see also West Penn Allegheny Health Sys., Inc.*

5

*v. UPMC*, 627 F.3d 85, 103 (3d Cir. 2010) ("A firm that has substantial power on the buy side of the market (*i.e.*, monopsony power) is generally free to bargain aggressively when negotiating the prices it will pay for goods and services."); *Kartell v. Blue Shield of Mass., Inc.*, 749 F.2d 922, 929 (1st Cir. 1984) ("A legitimate buyer is entitled to use its market power to keep prices down."). Defendants offering significantly lower reimbursement rates "seems simply to be [their] acting as every rational enterprise does, *i.e.*, to get the best deal possible." *Kartell*, 749 F.3d at 929–30 (alteration adopted) (internal quotation marks and citation omitted). It is true that out-of-network anesthesiology providers may be injured by low reimbursement rates. However, that injury is not an antitrust injury. Rather, that harm is a function of the interplay between federal and New York state law and the healthcare and health insurance system as a whole, and does not amount to *anticompetitive* harm. *See also Port Dock*, 507 F.3d at 122 ("[I]t is axiomatic that the antitrust laws do not protect a competitor against competition.").[1]

LIA argues that the low reimbursement rates are transformed into an antitrust injury by "something more," *i.e.*, the flood of communications and unreasonable response times and that UnitedHealthcare and MultiPlan are engaged in a "horizontal conspiracy." Appellant's Br. at 36–37. We are unpersuaded. First, accepting as true that the flood of communications and unreasonable response times are in "bad faith," "disingenuous," and not required by statute, regulation, or guidance, Joint App'x at 626, this is the kind of aggressive negotiation that is expected among rational economic actors and provides "little basis for challenging the

---

[1] LIA asserts that other district courts "have repeatedly concluded that [similar allegations are] sufficient to plead an antitrust injury." Appellant's Br. at 34 (citing *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268 (3d Cir. 1999); *Reddy v. Puma*, No. 06-CV-1283-ENV-KAM, 2006 WL 2711535 (S.D.N.Y. Sept. 21, 2006); *N.Y. Medscan LLC v. N.Y. Univ. Sch. of Med.*, 430 F. Supp. 2d 140 (S.D.N.Y. 2006)). As Defendants note, however, these cases are distinguishable because, *inter alia*, they involve exclusion from the market by *competitors*.

reimbursement rates." *West Penn*, 627 F.3d at 103.

Although the exercise of monopsony power "pursuant to a conspiracy" could subject the complained-of conduct "to more rigorous scrutiny," *id.*, the amended complaint does not plausibly allege such a conspiracy. LIA alleges the existence of "a horizontal conspiracy to suppress reimbursement payments, wherein [UnitedHealthcare], through [MultiPlan], could coordinate with competitors to cause virtually all insurers to offer low reimbursement rates, eliminating competition and forcing private, independent anesthesia providers to accept the lower rates." Appellant's Br. at 37. A horizontal conspiracy involves concerted action between competitors at the same level of the relevant market, while a vertical conspiracy involves combinations of persons at different levels of the market. *United States v. Aiyer*, 33 F.4th 97, 115 n.15 (2d Cir. 2022). LIA asserts that MultiPlan is a "horizontal competitor of [UnitedHealthcare] because both . . . own and operate Preferred Provider Organization (PPO) networks." Joint App'x at 627. LIA does not allege, however, that the alleged price-fixing conspiracy is facilitated and accomplished by MultiPlan's relationship with UnitedHealthcare, as two PPOs. Instead, the amended complaint alleges that UnitedHealthcare is a customer of MultiPlan, meaning that any agreement is vertical. The Supreme Court has stated that "a restraint is horizontal not because it has horizontal effects, but because it is the product of a horizontal agreement." *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730 n.4 (1988). LIA alleges that the effect of this arrangement is to depress reimbursement rates across all healthcare payers for which MultiPlan provides repricing analytics tools—*i.e.*, a horizontal effect. As the district court correctly noted, "[t]hat both entities may operate PPOs elsewhere in the healthcare ecosystem does not convert this vertical service-provider relationship into a

7

horizontal conspiracy." *Long Island Anesthesiologists*, 2025 WL 1031093, at \*10.

At bottom, the amended complaint alleges that UnitedHealthcare and MultiPlan, operating as customer and vendor, respectively, have driven down reimbursement rates for services provided by LIA and other out-of-network anesthesia practices to individuals covered by the Empire Plan.[2] We agree with the district court that these allegations are insufficient to constitute a cognizable antitrust injury.[3] *See Long Island Anesthesiologists*, 2025 WL 1031093, at \*6–7.

Finally, LIA argues that the district court abused its discretion in denying it a second opportunity to amend its pleading. Nowhere in its briefing on appeal or before the district court does LIA address how it would cure the defects in the amended complaint regarding the lack of a plausible antitrust injury. As we have emphasized, "a court need not always allow a party to replead simply because it asked. In particular, denial of leave to amend is proper where the

---

[2] LIA also argues that UnitedHealthcare's "goal in [driving down out-of-network reimbursement rates] is to drive out anesthesia providers such as LIA who compete with United's affiliated entity, OptumCare," Appellant's Br. at 18, which acquires and manages physician and healthcare practices throughout the country, and is described alternately in the amended complaint as UnitedHealthcare's subsidiary or its health-services arm. We are unpersuaded for two reasons. First, the amended complaint's allegations are simply too conclusory to plausibly allege the existence of a conspiracy for the benefit of OptumCare. *See Kirschner v. JP Morgan Chase Bank, N.A.*, 79 F.4th 290, 303 (2d Cir. 2023) ("[C]onclusory allegations are not entitled to the assumption of truth, and a complaint will not survive a motion to dismiss unless it contains sufficient factual matter, accepted as true, to state a claim that is plausible on its face." (internal quotation marks and citation omitted)). Second, even putting aside the conclusory nature of the allegations, LIA's OptumCare theory of harm is too speculative. Indeed, as described by Defendants, LIA's theory as to OptumCare requires a series of assumptions that are simply too attenuated to support a plausible antitrust injury. *See Reading Indus., Inc. v. Kennecott Cooper Corp.*, 631 F.2d 10, 14 (2d Cir. 1980) (noting that "there are inherent limitations in the substantive protection afforded by the antitrust laws: they exclude claims based on conjectural theories of injury and attenuated economic causality that would mire the courts in intricate efforts to recreate the possible permutations in the causes and effects of a price change").

[3] Because we hold that LIA has failed to establish antitrust standing, we do not reach the other grounds on which the district court dismissed the amended complaint.

8

request gives no clue as to how the complaint's defects would be cured." *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (internal quotation marks and citation omitted). The district court thus properly denied LIA's request to amend.

*       *       *

We have considered LIA's remaining arguments and conclude that they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court